PINCKNEY BROS. v. W. U. TELEGRAPH COMPANY.

1. A telegraph company, having received and transmitted a message, but with a mistake in its terms, resulting in loss to the sender, proof of due care by the company, or of the absence of negligence and carelessness on their part, is a good defense to an action brought to recover for such loss.
2. Telegraph companies are not liable for all mistakes made in the transmission of messages, except such as they may show to have occurred from an act of God, or irresistible force.
3. Telegraph companies are not held to the liability imposed by law upon common carriers, but are to be governed by the law applicable to that class of bailments styled *locatio operis faciendi.*
4. The ruling of the trial judge, directing the empaneling of jurors who had formed an opinion, not disturbed.
5. Under action brought against a telegraph company for damages to the extent of a loss caused by an error in the transmission of a telegram, plaintiff, failing to sustain his elected cause of action, is not entitled to recover an amount stipulated in his contract as the measure of the company's liability in case of error.

Before HUDSON, J., Charleston, December, 1881.

This was an action commenced by the plaintiffs, October 25th, 1880, to recover from the defendant $271.50, upon the statement in the complaint that, on the evening of May 22d, 1880, plaintiffs had delivered to the defendant's agent, in Charleston, S. C., to be sent as a night message, the cipher dispatch, which will be found in full in the opinion of this court; that such dispatch, when translated, had the following meaning: "If market firm, with hardening tendency, buy on best terms for the month of August, one hundred bales of cotton; if market has downward tendency, sell on best terms for the month of August, two hundred bales of cotton;" that the telegram was duly delivered in New York to F. Warley on the next morning, written as sent, except that the word "humor," meaning one hundred bales

of cotton, was changed to "hump," which stood for four hundred bales; that the purchase was accordingly made of 400 bales, which, when discovered, plaintiffs endeavored to cover by selling 300 bales of August delivery, but the loss occasioned by the error, although reduced by plaintiffs' sale, amounted to the sum demanded in their complaint.

It will be observed that the error complained of was caused by a change of the letters " or " into the letter " p." The testimony showed that the message was legibly written by the plaintiffs, was sent by a skillful operator in Charleston, and received by the ear of an experienced operator in New York; that the letter " o " was indicated by a dot, a space and a dot, and the letter " r " by a dot, a space and two dots, and the letter " p " by five dots, or represented on paper " or " would be . . . .. and the letter " p " ..... ; that their instruments were the most approved, and then in good order; that mistakes occurred in telegraphing which could not be accounted for, resulting, principally, from crossing of wires, atmospheric disturbances and improper adjustment of instruments; that no other mistakes occurred on that night between Charleston and New York.

Two of the jurors were sworn on their *voir dire*, one of whom stated that he had formed an opinion as a juryman in a similar case, tried a few days before; that he was not conscious of any bias, but had formed an opinion as to the sending of telegraphic messages, but, if sworn as a juror, would decide the matters of fact according to the testimony; nor would the opinion formed sway him outside of the testimony; that if the company failed to show cause for mistakes he had formed an opinion. The other juror was asked if he had formed any opinion as to the liability of telegraph companies, which would cause him to decide other than upon the testimony in this case. To this he replied : " No ; but I think that in the transmission of telegraphic messages accidents will occur, and influences will operate, which cannot be explained in testimony. In cases of that kind I have made up my mind as to where the liability rests." Both jurors were sworn, the plaintiffs excepting.

The judge charged the jury as follows :

This is an action to recover damages because of a mistake made in the transmission of a telegram by the Western Union Telegraph Company, which, it is alleged, caused an immediate and direct loss to Pinckney Bros. The charge is a breach of contract on the part of the company. The contract by which these parties are to be governed is printed here on the telegraph blank; and this and no other contract is to bind them. When Pinckney Bros. signed this contract they became parties to it; and when the company accepted the telegram it became the contract of the two parties. This is the contract : * * *

Now, the telegraph company has entered into the contract to send this message as a night message, under the conditions stated above, and Pinckney Bros. assented to those conditions. The contract is to be expounded by myself. Is there in this contract anything which renders it void ? The telegraph company has a right to make rules of a reasonable character for the conduct of its business. And it has a right to limit its liability by means of its written contracts. But, being an institution of a public character, to which the public are free to resort, it is against public policy for the company to exempt itself from all liability, from whatever cause. It cannot exempt itself from the errors occurring through the acts of its agents, of a negligent and careless kind. It cannot obtain exemption from the gross negligence of its agents.

This contract bound this company to deal with this message as a night message, subject to all the usual risks of a night message —freeing itself from all liability except the fraud, malpractice and gross negligence of its agents. When Pinckney Bros. selected a night message instead of a day message, they selected a message which was without many of the advantages of a day message, chiefly among which was that which would have insured absolute safety, viz. : the repeating of it. They subjected themselves to the risks incidental to a night message, and, in doing so, they then had a right, in case of a breach of this contract, to hold the company to that degree of diligence which they were bound to use in transmitting a night message, and not the amount of diligence required in the transmission of a day message, or one ordered to be repeated.

This is a cipher message; a message which evidence is introduced to show that the officers of the company did not understand. To them it was a blank, so far as the meaning was concerned, and it is contended, therefore, that they could not have had in contemplation the loss which would flow from the erroneous transmission of the telegram; and that, under these circumstances, only nominal damages can be recovered. They have undertaken to transmit that message according to the terms of this contract, upon their usual night message blanks; and whatever loss flowed directly and immediately from the failure to transmit that message correctly, is the subject for a claim for damages against the company, and must be recovered unless the mistake made in the transmission of the message is not attributable to the negligence of the company or its officers. Undertaking to transmit the cipher message without demanding an interpretation of it, they undertook to transmit just as they would have transmitted any other message, written on their day or night blanks, under their contracts.

This brings us then to the question of negligence—to the testimony in this case. That is a matter for you and not for me. I would say to you that the facts must be investigated by you with utmost fairness and impartiality, and with strict reference to this contract, with the modifications I have given you. The plaintiff in this case has proved the contract; he has established the receipt of the message, with the error existing, and that certain loss accrued to him. Having established that, I have been holding throughout this case, and so instruct you now, that the plaintiff could there rest; and that the burden of proof would be on the defendants to explain to you, that the error occurred through no fault of theirs—to rebut this *prima facie* case of the plaintiff, to show due diligence and care in the transmission of this telegram, as a night message, and under all the attendant disadvantages of a night message. You must not. allow the fact that it is a night message, and a cheap message, to pass out of your mind. The company has come forward and has endeavored to make this explanation.

In the other case, which some of you had under consideration, a question put by your foreman showed that a portion of my

charge was misunderstood.  The company is not called upon to explain how the mistake did occur, because that might be an impossibility.  The mistake might have occurred· in a way so subtle and mysterious that no one could find it out.  But it is the duty of the company to prove that they had an expert and skillful operator here; that the machinery of the company was in good working condition; that so far as they knew the wires were not deranged; that in New York there was a skillful and careful operator, and that by these two operators due care in transmitting and receiving that message was exercised.  If they prove due care and diligence on their part by affirmative testimony, and that testimony is such as to convince you of its truth, by its preponderance, then the company has made out a *prima facie* case of rebuttal, and would be entitled to be excused, unless it appear by other testimony that they were not exercising that due care and diligence.   They have explained to you the little characters that represent the letters "or" and the little characters that represent the letter "p."   They have explained that these little dots were exactly the same in number, the only difference being the difference in time between the clicking of the instrument; and that electrical influences existing between here and New York might cause the intervals of the clicking of the instrument to so differ as to make the letter "p" to be received in New York, while the letters "or" were really sent from Charleston.   The evidence is such as to show that this mistake might occur with skillful operators, if there was an atmospheric disturbance between the two points.   In looking at those little marks you must remember that those signs were received by the ear.   These matters the company bring forward to rebut the charge of negligence.

And now, bearing in mind the further testimony, that the transmission of these messages, notwithstanding care and diligence, are subject to errors and mistakes, bearing in mind that this was a night message, that it was voluntarily selected by the plaintiff as the means for the transmission of an important communication with New York; taking the testimony in regard to the condition of the office here and the office in New York, it is for you to say, as impartial men, whether the error in this case is to be attributable to negligence, carelessness, malpractice or fraud

on the part of the company's agents or officers. If, from the preponderance of the whole testimony, you believe that it is attributable to this negligence, why, then, the company is liable. But, if from the whole testimony, you are satisfied that it was one of those little mistakes which might occur, and do occur in the best regulated companies, and against which they cannot guard unless it was sent as a day message, and ordered to be repeated, then the company ought not to be mulcted in damages for that which, with the due exercise of care and diligence, it could not avoid. It can only be held liable when it is shown to have been in fault. If you come to the conclusion that this company, under all the circumstances, has not broken or violated its contract, then your verdict will be for the defendant. If you come to the conclusion that they have been negligent, then you will determine the damages to be awarded to the plaintiff.

Now, as I have said, this was a cipher message. My instruction to you is that, if the company is liable on the ground of negligence, fraud or malpractice, the actual damages caused by the mistake is the measure of the recovery. When a mistake of this sort has been detected, then it was the duty of the plaintiffs, Pinckney Bros., and their correspondent in New York, to exercise due diligence in making the loss as small as possible. It was an order, as received in New York, for the purchase of four hundred bales of cotton; and the party in New York bought the four hundred bales of cotton for the month of August. Now, gentlemen, having bought the four hundred bales of cotton, then if the company was liable for the mistake, then this person might have held on to that contract to its maturity, and then the loss occasioned by it at its maturity would have been the measure of damages. But if he saved loss by selling it out before the contract reached maturity, then it was a prudent sale. If the premature sale occasioned a loss, then that might have operated to prevent the plaintiffs from recovering.

It is contended that the operator could not have had in contemplation the danger of a mistake, or the probable importance of the message. Suppose that message had not been delivered, and the contracts in New York had not been entered into, then the company could not have been held responsible for the possi-

ble profits which the party might have made. But when the mistake has been committed, and the contract has been entered into, and produces an actual loss, then if the mistake is due to the negligence of the company, they are responsible for the actual damage, and that alone.

I am requested by the plaintiff to charge you as follows:

1. "That upon the acceptance by a telegraph company of a message of any kind for transmission, the company is bound to transmit the same correctly and without error, unless prevented from so doing by some uncontrollable cause." I will not put it in that shape. The company is bound to use due diligence, care and skill in transmitting the same correctly.

3. "That a telegraph company is liable for actual and proximate damage and loss, caused by an error or mistake in a telegram of any kind, unless such error or mistake be produced by some uncontrollable cause." I can't use that language exactly. I will charge that a telegraph company is liable for actual and proximate damage and loss, caused by an error or mistake in a telegram of any kind, if such error be produced by carelessness or negligence.

4. "That proof of the contract, the consideration and the breach, in an action by the sender of a message against a telegraph company for damages caused by an error or mistake in the message, is *prima facie* evidence of carelessness or negligence, for which the company is liable. And that thereupon the burden of proof is on the company to disprove the presumption of carelessness or negligence, by showing that some uncontrollable cause produced the mistake—or at least that some one or more uncontrollable cause or causes were in existence, to which the error might be attributable. And it is not enough to prove that the company has used the utmost care and diligence." That proposition I will not charge. But I will charge you as hitherto, that the burden of proof is upon the company, when a *prima facie* case is made out against it, to show not how the error occurred, but to show that the error did not occur by the fraud, malpractice or negligence of the company. The error might have been caused by something so mysterious that it could not be proved. It is only necessary, therefore, to show the exercise

of due care and diligence, and thus negative the presumption of negligence.

I am requested by the defendant to charge the jury as follows: * * *

5. " That the company, having shown the observance of due care in the selection of its agents and in the instruments used for the business it undertakes, and having shown the exercise of care by its operators, is not bound to go farther in rebutting the allegation of negligence." I would add to that: It is only bound to prove due care, and is not called upon to reveal the precise cause of the mistake.

6. " That the defendant company is not bound to show that errors in the message did occur from some cause other than the negligence of its officers or servants, if it show, as far as such proof is possible, reasonable. care, and thereby exclude the conclusion of negligence." That is correct.

These constitute the instructions which I have been requested to give you—and which I now charge you, with the explanations and modifications which you have heard. You have seen the contract, its nature and character; you have heard the testimony as to the incidents that naturally attend a night message; the increased risk which the party sending a night message takes. Having thus explained to you the law applicable to this contract, you will take the case; and if, from the preponderance of the testimony, you come to the conclusion that this was an error attributable to the neglect, fraud or malpractice of the defendant, then the plaintiff can recover the amount of the actual loss; but if, on the contrary, you come to the conclusion that the mistake has been accounted for in a manner which shows that it cannot be charged to the negligence of this company, or that it may be referred to some unknown cause, your verdict must be for the defendant. If they have carelessly or negligently wronged the plaintiff, then you will give the plaintiff the actual loss sustained. But if they have not done this, and the error is not attributable to the negligence of the company's officers, you will release the company from liability. The small amount involved in this case must not influence your verdict in any degree.

The plaintiffs appealed to this court upon the following exceptions:

1. "Because W. J. Miller and W. J. McCormack (two of the jurors who were sworn and examined on their *voir dire*, and who tried the cause,) were incompetent and should have been excluded from the jury.

2. "Because his Honor erred in charging that 'the company is not called upon to explain how the mistake did occur.'

3. "Because his Honor erred in refusing to charge as requested by the plaintiffs' counsel in their first request.

4. "Because his Honor erred in refusing to charge as requested by plaintiffs' counsel in their third request.

5. "Because his Honor erred in refusing to charge as requested by the plaintiffs' counsel in their fourth request.

6. "Because his Honor erred in charging as requested by defendant's counsel in their fifth request; and in charging, in addition, that 'it is only bound to prove due care, and is not called upon to reveal the precise cause of the mistake.'

7. "Because his Honor erred in charging as requested by defendant's counsel in their sixth request.

8. "Because the evidence before the jury was insufficient to support the verdict found; and because the verdict should certainly have been for the plaintiffs for a 'sum equal to ten times the amount paid for transmission,' to wit, in this case, the sum of $5, if not for the actual loss which they had sustained."

*Mr. T. W. Bacot*, for appellant, cited, upon the evidence of operators, 45 *N. Y.* 553; as to the distinction between day and night messages, 60 *Me.* 9; 62 *Id.* 209; 33 *Wis.* 558; 34 *Id.* 471. On the 3d and 4th exceptions, *Scott & J. Tel.*, §§ 165–7; 2 *Thomp. Negl.* 836; 62 *Me.* 219; 30 *How.* (*N. Y.*) *Pr.* 414; 60 *Ill.* 421; 74 *Id.* 168; 33 *Wis.* 558; 34 *Id.* 471; 35 *Pa.* 302. On 2d, 5th, 6th and 7th exceptions, *Shearm. & R. Negl.*, § 559; 2 *Thomp. Negl.* 837, 843; 6 *Wait Ac. & Def.* 9, 16; 6 *So. L. Rev.* 341; 15 *Cent. L. J.* 183; 62 *Me.* 209; 49 *Ind.* 53. The case of *Aiken* v. *Telegraph Co.*, 5 *S. C.* 358, is unsatisfactory, and doubted in 2 *Thomp. Negl.* 346. And in that case the action was by the receiver, a distinction recognized in *Whart. Neg.*,

§ 766; 41 *Iowa* 458. The burden of proof was on the company. 2 *Bailey* 157; 2 *Rich.* 286; 9 *Id.* 201. On 8th exception, 6 *So. L. Rev.* 327; 105 *U. S.* 464; 96 *Id.* 9.

*Messrs. Simonton & Barker,* contra.

*Mr. E. McCrady, Jr.,* in reply.

March 19th, 1883. The opinion of the court was delivered by Mr. CHIEF JUSTICE SIMPSON. The plaintiffs, citizens of Charleston, sent a night message from that city over defendant's wires to their agent in New York, directing him to purchase a certain number of bales of cotton. The message was in cipher, and a mistake was made in its transmission, on account of which several hundred more bales were bought than plaintiffs ordered. Cotton fell in price, and the plaintiffs incurred a considerable loss. This action was brought to recover damages because of said loss. The message being a night message, and under the rules of the company not required to be repeated or to be sent as promptly as day messages, was transmitted at much lower rates, and also upon different conditions than those attending the latter, all of which was specified in a special contract, printed as a heading upon the paper, on which the message was written, of which the following is a copy:

"Blank No. 45.
"THE WESTERN UNION TELEGRAPH CO.
"HALF RATE MESSAGE.

"The business of telegraphing is liable to errors and delays, arising from causes which cannot at all times be guarded against, including, sometimes, negligence of servants and agents whom it is necessary to employ. Most errors and delays may be prevented by repetition, for which during the day half price extra is charged in addition to full tariff rates. The Western Union Telegraph Company will receive messages, to be sent without repetition during the night, for delivery not earlier than the morning of the next ensuing business day, at one-half the usual day rates, but in no case for less than twenty-five cents tolls for a single message, and upon the express condition that the sender will agree that he will not claim damages for errors or delays, or for non-delivery of such messages happening from any cause,

beyond a sum equal to ten times the amount paid for transmission; and that no claim for damages shall be valid unless presented in writing within thirty days after sending the message.

"Messages will be delivered free within the established free delivery limits of the terminal office. For delivery at a greater distance a special charge will be made to cover the cost of such delivery, the sender hereby guaranteeing payment thereof.

"The company will be responsible to the limit of its lines only, for messages destined beyond, but will act as the sender's agent to deliver the message to connecting companies or carriers, if desired, without charge and without liability.

"A. R. BREWER, *Secretary.*
"NORVIN GREEN, *President.*

"Send the following half rate message, subject to the above terms which are agreed to:
"MAY 22d, 1880.
"*To F. Warley,* 101 *Pearl Street, N. Y.:*
"If failure hottentot humor if exactly idle humorist.
"PINCKNEY BROS.
"☞ Read notice and agreement at the top."

The judge charged the jury that the stipulations in this contract in reference to absolute and unconditional exemption for errors and mistakes, were void as against public policy, and that notwithstanding these stipulations, the company was still liable · if the mistake occurred from either the fraud, malpractice or negligence of its agents, employes or servants.

We may say at this point that no exception in the "Case" questions the correctness of this ruling, and therefore it is not involved in the appeal, and, not being involved, we have not considered it. The questions before us come up from another portion of the charge, and upon these the appeal depends. In the portion of the charge alluded to, the judge instructed the jury that upon a *prima facie* case being made by the plaintiffs, (which would be so upon proof of the contract to send, of the consideration and of the breach,) that then to rebut this the burden was upon the defendants to show that the mistake did not occur through any carelessness or negligence on their part, or of their agents. He further instructed that the company was not bound to prove either how the mistake occurred, or that it

F

did occur from some other cause than the negligence of its officers or servants. In substance, he charged that the company was not bound to explain how the mistake occurred, but was only required to show that it did not occur through the carelessness or negligence of its servants or officers, and that the *onus* of showing this was upon the defendants, as matter of defense.

The verdict was for the defendants. The plaintiffs have appealed upon several exceptions, assigning error. These exceptions, however, when analyzed and reduced, really raise but a single question, or rather, upon examination, it appears that the whole appeal turns but upon one question, which is this: A *prima facie* case having been made for the plaintiff by proof that the message had been received and transmitted by the company with a mistake in its terms, which resulted in loss to plaintiff, whether the company could be relieved from liability except by showing that the mistake occurred from some uncontrollable cause or causes, to which it could be attributed, the difference between the appellant and the presiding judge being that the judge charged that proof of due care, or the absence of negligence and carelessness on the part of the company, was good defense, while appellant contends that nothing short of an uncontrollable cause could relieve or exempt, the *onus* of showing this being upon the defendant.

We do not know that there can be any cause which, in the language of the exception, may be termed "uncontrollable," except it be an act of God or irresistible force, and the question to be considered, therefore, is, whether telegraph companies are liable for all mistakes made in the transmission of messages, except such as occur from an act of God or irresistible force, the *onus* of showing which is upon them.

There are three classes of cases in which the law has settled the principle, independent of the stipulations in the contract, which is to govern where alleged injuries have been received by one at the hands of another. These are: first, bailments; second, duties undertaken by one claiming to be skilled in the matter which he undertakes, such as medical treatment and other professional employment; and, thirdly, common carriers. As to the two first, the principle is that reasonable and due care and

skill, according to the nature and character of the work done or service rendered, is guaranteed, and, in case of injury, to be exempt, the defendant must show the presence of this care and skill, or, which is the same thing, the absence of negligence and inexcusable carelessness.    As to the latter, to wit, common carriers, the more stringent principle is that nothing but an act of God or irresistible force (expressed in the books as the public enemies) will exempt.

Now, into which of these classes shall telegraph companies be placed, or to which have they been regarded as belonging? It is true, the business in which these companies are engaged is *quasi*-public, but there is a wide difference between them and that of common carriers, and the foundation upon which the very stringent doctrine of non-exemption, except for an uncontrollable cause, is imposed by the law upon common carriers is altogether wanting as to a telegraph company.    There is no motive or opportunity for a telegraph company to make mistakes or commit errors.    There is no inducement or possibility for such companies to appropriate anything which may be entrusted to them, to their own benefit, at the sacrifice of their employer's interests.    Their business is simply to transmit messages by the medium of that mysterious agent, electricity, which, with increasing progress, is now being made to contribute so wonderfully and so usefully to our wants.

In the discharge of their duties, the principal qualifications required are experience, practice, skill and good faith on the part of their agents and servants, but even with the best qualified employes, much depends upon electric, atmospheric and other subtle influences beyond the reach of experience and of the utmost skill; while, therefore, there is reason for holding them responsible for the qualifications necessary for the proper performance of the work which they propose to do, as the first classes mentioned above are held, to wit, professional employes and bailees, yet there is no reason for holding them as insurers like common carriers.    Common carriers transport goods, merchandise and other corporeal materials, which are constantly in their possession from the commencement of their trip until the destination is reached, and it is entirely reasonable that they

should guard and protect these goods against all dangers which can be warded off by human power. · But telegraph companies transmit ideas—intangible and fleeting things—which, when placed upon the wire, instantly escape from the hands of the operator, and in a moment—yea, in the twinkling of an eye—are hundreds and thousands miles away, far beyond the reach and control of him who started them upon their distant mission, passing through different parallels of latitude or degrees of longitude, as the case may be, with the rapidity of thought, but encountering for themselves all the dangers or obstacles that may be met by the way. To apply the rule of common carriers to these companies, would, it seems to us, be extremely unjust, and to hold them absolutely liable as insurers would greatly impair this mode of correspondence, crippling, if not destroying, a most important and growing department of business.

. Such we do not understand to be the law as settled in England, or in a majority of the American States. It is true there is a lack of uniformity in the decisions, and in many cases where the point has not been distinctly adjudged, will be found many loose and somewhat ill-defined expressions tending to the application of the stringent doctrine of common carriers, but the current of authority is decidedly opposed to this. 2 *Thomp. Negl.* 836, and the numerous cases cited in the note at that page. Cases from New York, Pennsylvania, Missouri, Maryland, Michigan, Kentucky and other States. We concur in the doctrine indicated in these cases, and therefore think there was no error in the Circuit judge declining to rule as requested by the appellant.

In many of the cases which have been before the courts, the principal question has been whether these companies could exempt or limit their liability by special contract, either as to day or night messages. In this, the same want of uniformity exists. But this question is not before us, and we have not felt called upon, therefore, to consider it.

We do not think that these companies are bound to explain how mistakes, like this complained of here, occurred. This, from the very nature of the subtle agent made use of, would in many cases be utterly impossible, at least at the present stage of

information upon that subject, and the law does not require impossibilities.

Our opinion is that telegraph companies, as to the work which they engage to do, belong to that department known as bailment, especially to that class styled *locatio operis faciendi,* and that they are governed by the principles of law which have been long since established in reference to this department. We think the charge of the judge was in accordance with these principles, and therefore this appeal cannot be sustained.

The exception as to the competency of one of the jurors cannot avail. If it had clearly appeared that the juror had formed a fixed and decided opinion, then he should have been excluded, but this was a matter about which the judge was peculiarly qualified to determine, and we cannot say that he erred in his judgment. As it appears to us, if the juror had any bias it was decidedly in favor of the plaintiffs, but he distinctly stated that no opinion formed by him in a previous case would have the least influence upon him in this. In a case like this we would not feel warranted in overruling the decision of the presiding judge, whether his decision was the one way or the other. It is our province to correct errors of law and not of fact, and this seems to be more a question of fact than of law.

The plaintiff's cause of action, as appearing in the complaint, being outside of and independent of the contract between the parties, he cannot fall back upon that contract in this action. The complaint presents the only issue between the parties, and the case must stand or fall on that.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.